And we will call our last case of this morning, number 15-3810, Trzaska v. L'Oreal USA, Inc. and L'Oreal SA, Messrs. Goodman, Savage, and Cartman. May it please the Court, with the Court's permission, I would like to reserve three minutes of my time. That's fine. Thank you. You certainly may. In this case, the District Court dismissed Mr. Trzaska's sequel whistleblower claim for two essential reasons, neither of which commend themselves to this Court. The first is that the rules of professional conduct as promulgated by the United States Patent and Trademark Office, and the rules of professional conduct promulgated by the Supreme Court of Pennsylvania, do not apply to L'Oreal because it is a cosmetics company. And to directly quote my opponent's brief in support of the insupportable, they say L'Oreal is a beauty company, not governed by any ethics rules governing the legal profession. Let me explain why that can't be true and never has been true. First, it is not just a cosmetics company. It sets quotas every single year as to the number of patents that will be filed worldwide with government agencies. Could those quotas have been satisfied without violating any rules of professional conduct? We don't know, but we can say this. To the extent that the defendants are saying that Mr. Trzaska was not ordered by anyone to file a frivolous patent claim, to the extent he himself did not file a frivolous patent claim, and that is some justification for affirming the District Court, it is completely inconsistent with every secret ruling of the New Jersey Supreme Court and virtually every district court in this circuit. So you're saying that, in fact, frivolous or unwarranted patent claims were filed by Mr. Trzaska and or his office? No, I'm saying... Or that he was told to do so. Or that he was told to do so on behalf of L'Oreal. No, I'm saying he was not based upon the complaint, but I'm saying that isn't the standard. The standard set by the New Jersey Supreme Court, literally interpreting Stiga, is that you have a reasonable belief that a violation of law or regulation is occurring. You do not wait for the unlawful conduct to take place. Every court that has considered that has so held. Wait a minute, just for the heck of it, I've got a chicken and egg problem here. You're saying that there was a violation of law taking place, but you don't have to wait for the violation of law to take place. Precisely. And as a matter of fact, though, it is analogous. That's precisely what this court held in Reese v. Lynch about three years ago, albeit interpreting Section 806 of the Sarbanes-Oxley Law. But isn't it really simpler than that? He's called in, in October or whenever it was, and they're saying, you haven't met your quota. And he's saying, whoa, we've got some problems here. And I've got some ethical concerns about putting forth patent claims when my people are telling me in this region that we have problems. And so there may be issues. And then, supposedly, if somebody says to him, no, no, you're supposed to meet the quota, dude. And he doesn't. Then that seems to be a conceivable violation. They're telling him, go forward and, in effect, ignore the rules of professional conduct. I thought that's what you were saying. And that is what the complaint read directly, and all of these low inferences do say. This is not just some sort of agreement where people sit down and say, you know, maybe we should have a quota on the number of patents we file each year. And someone is for it, and someone may be against it. That is not what this complaint pleads. It pleads the quota was set, and that if you do not meet it, then you must file frivolous, non-patentable claims. And what he does, what he does based on the complaint, is go to his bosses. He is chief of patents for L'Oreal USA. He supervises his staff. And the staff isn't just going to be governed by numbers games, but by ethical responsibilities, both to the PTO and to the Pennsylvania Supreme Court. And he says, this is wrong. It would breach my ethical responsibilities, and since you are the patents applicant, it violates your responsibilities as well. That doesn't seem to get you under SEPA. Certainly that didn't satisfy the district court. The district court focused on there not having been a public policy that was violated. Well, that was the first point that I was beginning to address, and let me go back to that. The court first found that because L'Oreal is a beauty company, it is not subject to the rules of professional conduct. That's just not the law. Imagine filing hundreds and thousands of patent applications with the PTO. You are the applicant, Mr. Traska is your lawyer. Is it even conceivable that you can violate, or ignore those rules, and somehow say, they're just a beauty company? Let me just draw to your attention two cases which make the point marked by about 16 years. Parker, the appellate division's decision in 1989 on behalf of a patent lawyer who claimed a marketing part in a trade secret violation. And what the court did there is conclude that the rules of professional responsibility apply. What was this company? It wasn't a law firm or a law-related company. It was a chemicals company. And then in 2003, albeit in a Pierce whistleblower case, the Supreme Court of New Jersey greenlights a Pierce claim. And who was the plaintiff? A young woman who was practicing securities law for Payne Webber. Payne Webber isn't a law firm or a legal firm. It's a financial services firm. Let's assume you have a very solid argument there. One of the procedural issues here relates to L'Oreal S.A.'s motion to dismiss the appeal. How do you respond to that? Now they brought a motion to dismiss under what, 12b-5 initially? Yes. And the court's response, they dealt with it under 12b-6? It's exactly right, Judge. It did two things on the same day. It granted the 12b-6 motion. And as the lawyer of the parent company, S.A., it denied its motion as moot. Let me just take a look at this court's jurisprudence. In fact, I mentioned least already because it's so much important. I'm going to return to it. The order was not just related. It was the precisely same order that dismissed both claims, even though the parent company didn't file a b-6 motion. We took an appeal of that b-6 order and opinion in the cap sheet. We didn't just include L'Oreal U.S.A. We included the French parent company. But it's not mentioned separately in your briefs, though. They don't appear in your issues presented. The arguments, it's just not dealt with separately. Judge, this was filed as a motion to dismiss. We spent a 10-page brief responding to it. And then we didn't bring it to the court's attention in the opening pages of that brief. Any notion. I mean, just think for a moment. We've written a 9-page brief citing this court's case law, saying that the reason that it was appealed is for one reason only, 12b-6. Both defendants were implicated by that. Both sides were named as parties. This court named them as parties. And finally, in late July, there was no prejudice. Both companies filed briefs. And, quite frankly, when you look at the brief of the parent company, the last five pages are addressed to a 12b-6 motion. There's just no way under this court's case law that that motion to dismiss can be granted. So what happened with regard to the actual appeal? Because supposedly 3C-1B, I guess it is, says that you need to specify the actual judgment. This court's decisions have held that if orders are related, if there was a clear intent to bring it up as to both parties, and there has been no prejudice, that will be satisfied. We made that abundantly clear. There's an underlying motion to dismiss by Judge Pratt of the underlying suit. Finally, there's a Rule 59 motion that's belated, which is denied. The power only moves to appeal the 59. This court held that two orders, albeit the second on the underlying motion to dismiss, wasn't appealed, that they were interconnected. We have here identical, not interrelated orders, entered the same day by the same judge who denies the French company's motion for one reason. I'm not reaching that issue. What was the claim against S.A.? Because Mr. Trasker was an employee of U.S.A., right? He claims in his complaint that he was an employee of both. Judge Wiginton ruled without differentiating the discreet claims against the parent or the U.S. subsidiary, that all the claims, in fact, should be subject to Rule 26, dismissal. And when one looks at the complaint, the amended complaint, you will see that these mandatory quotas, meant to be followed regardless of whether an underlying invention was patentable, were set by the parent company. You will see that when Mr. Trasker sat down to verbalize and object, having to do this under the pressure of compliance with numbers rather than his ethical duties, and the ethical duties of the company, the CFO of the parent company said no. And moments after that, weeks, he was fired. Can you address how we could come to the conclusion that there was a violation of a public policy here? Yes. What L'Oreal was doing? Yes, absolutely. The public policy... Well, what in fact was it doing? The contention is that they were filing very frivolous, asking for the filing... That they had a plan, Judge Fuentes, and that plan violated the ethical responsibilities that fell not only on Mr. Trasker, but on the company. What was the plan? The plan was to file a set number of quota patents... I saw it got to 500 and went... 500 globally. Why does L'Oreal want 500 patent applications filed within a period of one year? They do it continuously, and we plead this in the complaint. I understand. They want to secure a financial advantage. They want to be able to have it incentivized so that financial advisors buy for their stock. Buyers of their products will see this. So maybe the public policy is a flaw in the market? No, this is an attorney's case, which would raise separate questions. I thought you said securities purchasers. No, but that's what you're asking why. Why are they doing that? And that's one reason. And that reason trumped, for example, ethical considerations that fell only on the shoulders of Mr. Trasker. Is L'Oreal the only publicly traded company? Yes. In Paris. What's the effect of having... There's a quality control group that vets these things. Don't they have a say in this? Yes, they do. Again, take a look at the amended complaint in light most favorable to the pleader. In this case, they were subject to two outside reviews as pled in the complaint, and that showed that the quality of the inventions were very poor. And so now the rock hit the road. That's not a very good metaphor. In any event, I'll forget the metaphor. What happened was that this is where the pressure was put on the lawyers and their staff. The pressure was you've got to get it filed. The scientists have got to move quickly. There's a plea in this case that says the scientists disagreed. They weren't able to comply with this. Judge Wiginton didn't have a problem with any of that, but she seemed to focus on there being no violation of public policy. But, Your Honor, you'll see that that is wrong. It is statutorily wrong, and it goes against every precedent set from the New Jersey courts at this court. A, the statute doesn't say you have to prove an actual violation. Again and again, the statute said a reasonable belief that one has been filed. That's disrobing, it's heisman, and it's a state of nudge. And it was earlier this year that Judge Chesler, faced with exactly the same argument in a case involving a lawyer, concluded that the lawyer doesn't have to prove an actual violation, just a reasonable belief that one is taking place. And the language he used, and that this court used, is critical. And I'd like to read it. This is what Judge Chesler said as to whether you have to prove an actual violation for a reasonable one, which, after all, is all the statute requires. Section 3A and 3C. He wrote as follows. It furthers the purpose of sect... I'm sorry. This is this court's decision in Wiest. And in that case, the argument was, under the Sarnez-Oxley law, you have to prove an actual violation rather than a reasonable belief. This is what the court wrote. But it also creates a climate where ongoing wrongdoing can occur with virtual impunity. When the Supreme Court of New Jersey was faced with the very question you put to me, Judge Fuentes, do you have to prove an actual violation or not, it said no. It has said it every time it's had to consider it. Indeed, last year in the Litman case, Litman v. Ethicon, which dealt with the whole notion of watchdog employees exempted from SIPA. It said absolutely not. That would be for a legislature to have to do. All they have to do is have a reasonable belief that something is amiss. And that's the public policy here. And that's why the district court was wrong. Could you articulate that public policy? It's going back 71 years to the Supreme Court's decision in 1945 on precision instruments. It notes that patents serve and are a public interest. It is in union with a public interest because of the monopolies that they create. That is 71 years of consistent case law. The PTO rules explicitly state that patents are infused with the public interest. The rules of professional conduct of the Supreme Court of Pennsylvania say the same thing. I don't have to remind the court my duty today, under Rule 3.13b-3, to be candid. To draw to your attention cases that help me and don't. Mr. Trasta had that duty. This is a public purpose. It is absolutely wrong to suggest otherwise. And just taking a look at the case law is the only conclusion that can be drawn. Because if you say, as the district court did, that the rules of professional conduct only benefit me and my colleagues as lawyers, or Mr. Trasta and his colleagues as patent lawyers, who disabuse every notion that we have of lawyer's responsibility, why have rules of professional conduct? Those rules apply not just to Mr. Trasta, to which he followed to a T. They also apply to his company, Royale, which was the applicant. And if the applicant took note of this and informed the PTO that we have this quota policy, and that policy or practice is that we are going to require the filing with you of patents that involve innovations which are not patentable, I would suggest that the PTO would say, we need to know that. Well, you know, now you're getting into an area where you're just having a policy disagreement with the employer, right? No, sir. No, sir. This is not just sitting down. I mean, I don't believe that the complaint says that the employer told the attorneys, go out and file frivolous patent applications, right? Wrong. That is exactly what the amended complaint pleads, that this was not just sort of some quota system. Royale told them to go out and file frivolous patent applications. But the amended complaint states to a certainty that it developed a quota system, and that as a result of that quota system, patent lawyers were required, if necessary, to file frivolous patent applications with the PTO. And Mr. Traska, a seasoned patents lawyer who worked for them for more than 10 years, was the chief of patents in the United States, objected. And the matter is absolutely clear that he objected. Is it the case, then, that an attorney who is fired for refusing to file a patent application that he or she believes is baseless has a CIPA claim? If, under that set of facts, absolutely, yes. The rules of professional conduct would affect anybody who is a rule 11 motion in court, for example. Suppose a lawyer not only filed something with court, knowing that it wasn't supported by fact or law. That's why we have rule 11. That's true of a lawyer and a law firm who doesn't want to file a complaint because he doesn't believe that the complaint has merit, now gets fired and has a CIPA claim against the law firm? It depends on the facts. If he was compelled by his employer, the law firm, to file something that was frivolous, certainly there's vicarious liability there. And if he was willing to breach his or her ethical responsibilities, my answer to your letter is yes. This statute, passed in 1986, was hailed as the most rigorous whistleblower law in the United States. And if we just look at a decision several months ago in the Baldwin case, the city solicitor for the city of Atlantic City, claimed that the pay-per-play rules that she was supposed to oversee were being violated. The city claimed, no, you haven't proven that. And the court had to decide the very question you've asked me, do you have to prove the actual violation? And the court said it's the Baldwin case, which we've cited. No, you don't. The Supreme Court of New Jersey has made it clear. You've got a reasonable belief. That's all that Mr. Traska needed to prove. It is, in fact, what he pled. And he ought to have the opportunity to go for it. I see my time is up for now. We ask the court to reverse the amendment in this case. We'll get you back on rebuttal. Thank you. Mr. Savage. Good morning, Your Honor. Did it please the court, Eric Savage, on behalf of L'Oreal, I'd say. If you could run, I assume you're here on the motion to dismiss the appeal. Go through the Polonsky factors, if you would, that were noted by Mr. Goodman. Of course. There are several factors that are discussed in the Polonsky amendment. First, is there a connection between the specified and unspecified orders? There is not. These are two orders filed against with respect to separate defendants with separate attorneys. And they were issued the same day and relied exclusively on the same opinion. In effect, talk about a surprise, a 12b-5 motion became a 12b-6 dismissal. It became that in the sense that the district court ruled that if Mr. Trasker could not make a case against the actual employing entity here in the United States, he certainly was not going to be able to make out a case against the French corporate parent of that employing entity. But the claims are different. What does that merits have to do with the suggestion in the 12b-5 that there was improper service of process? Well, the motion addressing the service of process is different than the 12b-6 motion. But there are clearly differences between the two companies in the relationship of Mr. Trasker with USA, which is his actual employer, versus SA, which is the corporate parent of his employer. Those are different issues. These are different defendants, which it would be no surprise to anybody would be asserting very different lines of attack against the United States. Sorry to be clear, the plaintiff is not an employee of yours? He is not. He is an employee of USA. Not of SA. So that's one factor is the connection. The second factor is the intent to appeal. And I would respectfully submit that words matter, that actions matter, that we live and when we appear in front of your honors, we are bound by the rules. And the chronology establishes that the plaintiff deliberately did not appeal as to SA. He did not file a notice of appeal as to SA within the 30 days required by 28 U.S.C. 2107 and Rule 4A1A. Do you think it's still contained in the caption of the pleadings? The caption of the pleading judge is just the cover of the book. It doesn't cover what's inside. But it does show intent, does it not? No, it does not, Jeff, because the notice of appeal says, I am appealing the order, singular, order, singular. And when, as required, he attached the order from which he was appealing, he did not include the order addressed to SA. If I remember my letter, which I don't, we have the old maxim of inclusion of one is the exclusion of others. So that when he included the order addressed to USA, and he deliberately did not include the SA order, he therefore excluded it. He had the opportunity to file a motion to amend the notice of appeal. That would be required to be filed by December 30th. But that wasn't done. Do you claim any prejudice at all? Absolutely. What's the prejudice? Well, the prejudice is that, frankly, Storting would be somewhat slippery away in each service of the assumption the complaint was done at all from the very beginning. Were you denied a full opportunity to brief the issues? We were not. That's somewhat circular. You know, we filed this motion back in April, and the court decided to hold it until the argument of the full appeal, which is certainly entirely within the court's limits. You filed the motion for 12B-5. We filed the motion for 12B-5. And then when we filed this motion, we were back in April. We were eventually told it would be dealt with as part of the plenary appeal, which is obviously the court's discretion. But at that point, once we were told that, I think it would be irresponsible, if not malpractice, for us not to go forward with the appeal and address what we're going to say. The court sent a notice of appeal to SA's counsel shortly after the appeal was filed requesting the attorney's appearance. You then waited five months to file a motion to dismiss the appeal. That's a long time. It is a long time, but there is no time limit. There is no mandatory limitation. And you would have a great case if, within those five months, you were denied an opportunity to brief the appeal. But you weren't. Well, Your Honor, I don't know that the courts did. I can only speculate what the court's decision would have been as far as whether to hold our motion in connection with this plenary appeal if we had filed in April as opposed to April. I don't know how other circuits are, but this circuit, from way back when, has, on procedural matters, tried to get to the merits. And in Polonsky it says, or in Salima, our jurisprudence liberally construes notices of appeal. But there was no notice of appeal filed here. But liberally construes. In other words, Polonsky was pretty much quite similar to this case. Well, the difference here, and we go back to the Elfman case, when counsel says that the two orders are connected, that's really misconstruing the authority. Where cases are related, such as to pick up the notion of the liberality of construing notices of appeal, those are where there is a logical connection in sequence. So, for example, the decision denying a motion to reconsider picks up the summary judgment motion on which it was based. The summary judgment motion decision picks up the discovery motion which underlies it. These are two different defendants, two different lines of attack on the case, two different series of issues. But you think, no matter what, you think it would have went on the issues because this person is not an employee of SA. We do think that, but we don't think we should be required to, or that a plaintiff has properly brought us into the case such that we would be obligated to engage in the type of discovery. And the thing is, Judge, and I keep coming back to this, even if counsel thought that and somehow says, well, everybody should know that I really meant to include SA in the appeal and that somehow your honors and the nation somehow have intuited or understood clairvoyantly that he meant to appeal. Actually, it's an easy intuit. Respectfully, Judge, it isn't, because we are entitled to rely on the papers that the appellant files. You're correct. In fact, if federal appellate procedures 3C1B is applied to the T, but there are exceptions to that, Polanski gives you the factors you look to, and I'm unsure how you have those factors in your favor. Because I know on the merits you may have a great case. We may have, but we don't think that we should be required to be involved in it because there was no intent to appeal. Even if the plaintiff thinks that the final case-ending decision, dismissing his appeal against SA, was baseless abuse of discretion, or what you will, to quote Sam Spade at the end of The Maltese Falcon, your man's supposed to do something about it. And you're supposed to have taken the plaintiff another five minutes to change the notice of appeal to say, I'm appealing from the orders of the district court, that he didn't do it, that was deliberate. You are absolutely right that he didn't do it. And the question is, do we still consider it under the factors that Polanski gives us? Respectfully, Judge, he has not given Your Honor the power, he has not invoked the jurisdiction of the court, such as to bring us within the jurisdiction of this court, and thereby mandating dismissal of the appeal against USA. Sounds like you're still making a 12b-5 argument. Not making a 12b-5 argument, Judge. The 12b-5 argument may or may not have been sustained by the district court, but the fact is that the order that dismissed us, whether it was under 12b-5, 12b-6, or whatever reason, was something that Mr. Trasker was required to do, he was required to put us on notice, he was required to put Your Honors on notice, and he did none of that. Thank you, Your Honor. Thank you. We'll hear from Mr. Cartman. May it please Your Honors, good morning. Christopher Cartman, K&L Gates. I represent L'Oreal USA entity, Mr. Trasker's employer. Your Honors, the issue I think that requires the most focus... Let me just at the outset let you know what my concern is. Maybe you can see this as a possible Rule 56 case after discovery, but to have as a matter a 12b-6 on a motion to dismiss a person who claims in a complaint that he was terminated because of his opposition to a company policy to file X number of quotas when he thought that to do so would be violative of certain rules of professional conduct. How does that survive a 12b-6 motion? Well, indeed, Your Honors, as we saw from the district court's opinion, which was... I should say, how does that not survive a 12b-6 motion? For the reason stated in the district court so succinctly, Your Honor, the main issue which I would direct the court's attention to is, when we're talking about 12b-6, we're talking about the complaint. Well, it's been grossly overstated by counsel in papers and then again today, but it's not in the complaint and it was not in the motions to dismiss below. This case was never about the contention that L'Oreal has a policy that attorneys are to file patents whether they're filled or not. At this point, I have to consider only what's in that amended complaint, is that correct? Exactly, and it's silent, Your Honor. It does not say, it says L'Oreal had a quota system, that Clark Group, where Mr. Trasker was, had to file 40 patents. It does not say that L'Oreal encouraged that that policy included, if you file these patents, whether they are frivolous or not. There is nothing in the complaint that suggests expressly that L'Oreal ever said that attorneys are to file no matter what, that they impliedly said that, that they suggested it, or they condoned it, or that they would have to accept it. Well, how about the counsel? I mean, they did say, if you don't, your employment's going to be at risk. Right, what they said was, there is a quota system. Remember, the quota system's not just for the attorney. It's for the patent team, which includes researchers, inventors, whose job it is to make inventions for patents, laboratory heads in France, and the patent team of lawyers. These are all directed to the patent team, and it was a company telling a patent team, if it starts with inventors, you're an inventor, you have to invent. They were going to create metrics for you to do so. That's what it was. What is the purpose of a quota system? The quota system is, again, coming from the complaint, Judge Fuentes, it's plaintiff's recognition that there was a business justification to the quota system. It's not in dispute in the case. It's in the complaint. Plaintiff says that L'Oreal had business reasons why it's important for it to be, have patentable products and have patented products. I suppose to be perceived by the public that the product that they're selling is cutting-edge stuff. The contentions in the complaint are that somehow it's perceived to be more of a, the products are viewed to be in a different light when they're viewed to be charities that they're scientifically developed and proven. But that's exactly counsel's complaint, though. He's pretty much saying that these patents that I'm asked to file are meritless. No, I don't think counsel has said that. I have a reasonable belief that they are meritless. Well, it's very interesting, Your Honor, because if you look at the complaint, counsel never says he filed a frivolous patent. He came in 2004. No, what he's saying is that don't put me in a position where I need to, we have problems, and problems with regard to certain patent issues exist that we think make these particular applications not patentable. And the implication is just get it done. Just do it. And that sounds like what you're telling somebody is to violate his own rules of professional conduct of the state and also the rules that relate to the PTO system. Well, Your Honor, the contention of what comes from Mr. Trask in the complaint was a conversation in which he said to a superior, I'm not going to file patents that are not patentable. Sounds like a pretty good thing an employee should say. Absolutely. But what I'm saying is that was not, there's no response recorded in the complaint from the company saying yes, you will. The only response are other things unrelated to that conversation. Just a complaint of the canning. That they continue the quota system. Right. Your Honor, what he does not say in the complaint, to say that there is no expression in the complaint whatsoever that L'Oreal, that this was a policy that it would encourage or condone, there's no expression. And if it's going to be implied, Your Honor, this is basically been turned into a fraud, similar to a fraud complaint. And meaning that what's just been said, and it's not said in the complaint, is that L'Oreal is effectively ordering its patent counsel to perform fraud on the PTO by filing frivolous patents. And if it has become now a fraud case, and rather than just a case about quotas, then the rules for fraud of pleadings, Johnson v. New Jersey Higher Education, Capana v. Tribeca, Young v. Irvington, it's clear in a SEPA case, if you're going to allege fraud type allegations, you must plead the fraud. Your challenge to the complaint wasn't on that basis, was it? Sorry? Your challenge to the complaint was not on that basis. The challenge to the complaint, Your Honor, was when you put up the, because as the complaint is pled, the only thing that's alleged is the, the question is, what is the conduct at issue? What's the crime? This is a whistleblower. What is he whistleblowing? If you read the complaint, what he's, what is alleged is L'Oreal had a quota system. That's what this case is. But it's also alleged that the patent system exists to benefit the public. Correct. And how is it not in the public's interest to safeguard a well-functioning patent system? In effect, he's saying that if I file certain applications for certain of these patents, it will violate the rules that exist with regard to applications. And I don't want to do that. I feel very uncomfortable doing that. The, the specific rules at issue, the RPCs at issue, Your Honor, dealing with filing frivolous actions, all the 71 years of precedent, the cases that have been talked about, expressions of public policy, relate to patents, meaning patents are in place. But you don't think, you don't think those rules are established and enforced for the protection of the public? The fact that lawyers who appear in, in the PTO must file papers that are, that they certify are non-frivolous or not for an extension of the regular law, no, I think that in that context, that particular rule would exist for the private interests of the PTO and for the attorneys practicing in it. Because, Judge, what your, the public expression of public policy is patents is when a patent is issued and then we wield that patent and we go around serving the public interest. These are patent applications that, according to Mr. Trasker, might very well be unpatentable and by his claim, frivolous. If they, if they are in fact that, they will not become patents. The applications will be denied and they won't be patents. So really what the issue is, is if, it's a clogging of the PTO with applications that will ultimately be, that are not meritorious and will not result in patents. So it is, that 71 years of law is, is focusing on different things. Could you be fired for refusing to violate your ethical obligations as a legal professional? Could you be fired for it? Yes. If it matched up precisely and there was allegations that he was told in some way, an express allegation, that he is to violate an obligation, absolutely, Your Honor. No, but the point is, can Mr. Trasker be fired for refusing, for what he believes are his ethical obligations as a legal professional? If, if... Not what you believe, what he believes. Could he be fired for what he believes? He, if he believes and has some basis in the belief that the final patents that he thinks are, in certain cases, not patentable, that it would violate his ethical obligations as a legal professional, can he be fired for that? No, Your Honor. He, he would not be able to be fired for that, if he expressed it. It's not, he didn't express it that way. He did not say, I have patents in front of me that I cannot file. He'd been there for 10 years. This quota system existed when he arrived in 2004. It existed until 2014. He filed patents year over year and signed off on them for 10 years under that system without any issue or tension or pressure of any kind. The only thing that changed in 2014 was an allegation by Mr. Traska that L'Oreal instituted a program to improve the quality of patents and that, therefore, he got less of them. So the tension, Your Honor, is, was really between the quota system and the number he was receiving. It's a, it was a business tension. Was it to improve? It's a fallacy to say it was a tension with RBC. I haven't seen my review, but was it to improve the quality of the patents or to improve the numbers of the patents that were filed? The quality. So the contention in the complaint was, in 2014, L'Oreal undertook a program to improve the quality. As a result, it required more from inventors. Because I was seeing in my reading the numbers were going up dramatically in a steep, very steep curve, like about 200 to 300, up to 500 per year. They had been that for many years, worldwide, Your Honor, is what you're thinking of. If they're so worried about the quality, why would they put a number on it then? Well, because, again, there is, these are business metrics, and if, if you're going to have inventors, and they're going to work in Clark, and they're going to be a requirement of 40, and you've got a certain amount of people, there is nothing improper for a business to put, to project metrics to say, you're inventors, you need to invent 40 patents amongst all of you in the area. That's what was done. Actual patents are displayed on the products itself. Patent pending, for example. Either pending or a patent, yes. Can you just give us a little, you said, you made a point of saying that a patent is a product of a whole team. And I know that, in reading the papers, there's folks who vet these things. I get it. First off, I guess that he had never, there's nothing in the complaint about, I guess, any patents being denied that he put through, right? There's nothing about that at all. And as I said, Your Honor, for 10 years, he'd been under, operating under 500 worldwide. The numbers are all in the complaint. It's called a system. And there was no attention whatsoever expressed about RPCs or anything. Which is very odd, if you think about it, because, according to Plaintiff, the patents were of much less quality all during that time. He says, in 2014, undertook to improve them. And as a result, they got less. So, for 10 years, he, according to him, received lower quality patents, signed off on them for 10 years. It says he never filed a frivolous one, and that there's no tension in RPCs. And the irony, why I think he is not deserving of inferences from Your Honor, that he's asking. He's asking for an inference that L'Oreal had a policy to mandate that people file frivolous patents when he didn't say that in a complaint. And he's asking for that inference when he's basically said that, I got better quality patents in 2014, and all of a sudden, I had creation of tension with the RPCs. And that was a business tension that was created. It was in the number now. It was harder to reach because he received less internally. I mean, the problem that I have is, take an example. There's a deal. The company wants this loan to go through. And the attorney comes to me. He's supposed to give a legal opinion that there are no violations of law. And he realizes that, with regard to this particular, or no violations of other agreements. And he realizes that there is a violation, if you do this particular deal, of another contractual arrangement. And the company says, look, this deal is life or death for the company. We have to get it done. You need to give the opinion. And the person says, I have an ethical obligation to act according to these rules. He has a good case, doesn't he? Absolutely, Your Honor. And if it was pled that way, it would be a different story. It wasn't pled here. Nobody came to him and said, this is a life or death. You get this done. All that was said, the most that comes off this complaint is, a quota system was in place. And he said to somebody, I'm not going to file patent quotas for patents that aren't patentable. And there was no response. No response until a month later, when he was fired. Right. After there were meetings regarding, he was clearly having issues about the quota system at this time, Your Honor. Clearly. There's business issues. Do you think there was a question that the patent applications that he was asked to file were meritless applications? I'm sorry, Your Honor? Meritless applications. Was there an issue as to whether there were meritless applications? There's no issue. The complaint is silent to there being the merit of any patents at all. He does not say, he had sitting on his desk meritless patents. He never filed them. When he ever made it clear, L'Oreal was told, you file a meritless patent. That's the problem. I just have to go back and look at the complaint again. But you're saying that the only assertion made was, his objection was to the numbers of patent applications. I'm asked to file 500 applications. I can't do that. It's too much. He didn't even go that far. He was operating under a quota system. And his only affirmative action that he took himself at all was to say to somebody once, I'm not filing applications that I don't feel are patentable. Well, wait a minute. Now that's a different story. That's not objecting to the numbers. That's saying, I'm not going to file applications that cannot be patented because they're there. Isn't that meritless? Well, he doesn't say he was ever told to file patents. So to say that, Your Honor, it's similar to the Young case. For example, Cabana, when Young was the police officer who felt that he was an investigator and part of the investigation of another police officer, should he take a drug test when he felt it was not warranted, it would be illegal to require an officer who crashed a car or something to take a drug test. And he didn't do it. And he was ultimately fired. And he said, the reason I was fired is I did not take the drug test. And what the court pointed out is it was a SEPA claim. You never pled that you were asked to take the drug test. That's what's missing here. Mr. Traska has not pled, he was never told, before he made that expression, file a patent that's not patentable. He just said it. It would be like billable hours in a law firm. Many law firms institute billable hour requirements and they say, lawyers must bill 2,000 hours. That's a lot of hours. And if you don't have any work to do, you can't do it. It will be akin to a law firm putting that in place and saying, the law firm is the equivalent of L'Oreal. We're putting in, associates, partners must bill 2,000 hours. L'Oreal said, inventors, patent teams, 40 patents. That's a slippery slope. You can't bill 2,000 hours because there isn't enough work. In effect, you're being told you have to bill 2,000 hours so therefore you have to make it up. Right. The inference is this, Your Honor. And this is where it comes down on the billable hour analogy. If a law firm says there's 2,000 hours required, is it to be implied that that means, by having that rule in place, that people are to do whatever is necessary in concluding, breach the RPCs, and commit fraud to get there? And what I'm saying is, it absolutely not. There must be something pled where the law firm in that case would have said, you get there whether you got the work or not. If you file for, you pad your hours or not. That's what's missing here. What do you say the given reason for his firing is? Your Honor, there were clearly, there was a new 2014, he was told that his position was being eliminated because, in fact, he was holding a position at the time of U.S. patents and then also there was another part of the world that he had control of. That had been a long-standing issue in the company of his position. And he was terminated. And clearly, Your Honor, he also, he did threaten in what he, he had problems with the quota system, no doubt. And he, there was in the complaint evidence that somebody he claims told him because he had threatened to file a lawsuit that was also a factor. But, Your Honor, I'm over my time, but I will just emphasize and encourage Your Honors to please review the complaint and look for what would matter here and I think change things, which would be something to suggest that, in fact, he was encouraged, implied, expressly told to file patents if they were frivolous. It does not exist and it changes the landscape tremendously of this claim. All right. Thank you very much. Thank you, Your Honor. Mr. Goodman. Very briefly, in response to Mr. Savage, why on earth would we file a notice of appeal on an order that says, as to the French entity, your motion, 12b-5, is moot. We are dismissing you from the case on 12b-6 grounds, which you didn't move. We filed a notice of appeal pointing to the 12b-6. We identified both companies. They had plenty of chances to file a motion before that five-month period. What was it, just a slip-up that somebody didn't reference that particular order pertaining to S.A.? I don't think so. Why would I be here on an order that says... You wouldn't be here if you had specifically noted that particular order pertaining to S.A., right? That's correct. That's absolutely correct. We clearly satisfy those standards. And all I'm simply saying is the argument that we didn't attach a separate order that says it's moot as to you on 12b-5 grounds hardly is fatal. One other point. There's been an assumption here that Mr. Trasker was the employee only of the U.S.A. entity. Paragraph 9 of the amended complaint at Appendix 26. At all material times, Plaintiff was an employee of Defender Royale U.S.A. and Royale S.A. That's in the amended complaint. Now, as to the underlying merits, let me come back to what the complaint does say. The complaint says that things happened in 2014 that hadn't happened before. Namely, the outside evaluators concluded that the inventions were of poor quality. And then there was this tension. Do we follow a quota system? And I'm glad my opponents finally used the word quota because if you leave the brief, they use the word goals as if it was a race or sex case for some reason. It was a quota system. And you never had an opportunity or a need to question it until they said, file it or else. And what the else is is laid out immediately in the complaint. At Paragraph 46, Appendix 32, Plaintiff and his patent attorney colleagues were informed that the 2014 target of three file patent applications was not met. There would be consequences which would negatively impact their careers and their continued employment. And then he speaks with the CFO of a French company and he says, these are my ethical responsibilities. And what happens? Judge Embro, you answered that question. He's pled shortly thereafter. Out of the womb, he is fired. My final point. Counsel would seem to suggest this is a business disagreement and therefore it's not SIPA protected. I've already answered that, I think. I ask you to take a look at Paragraph 73 of the amended complaint. It's about the second to last one. In a verse, that both defendants were aware that the underlying practices about which Mr. Trask had complained were unlawful. Let me read that paragraph. We'll take a look at that. 73. And for all those reasons, thank you for the time you've given all of us today. I appreciate it. Thank you to all counsel for very well presented arguments. And we would ask if you wouldn't have a transfer to prepare this oral argument, split the cost 50-50, and no urgency necessarily in getting it to us. Thank you so much. Thank you.